UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
v.                             )            3:26-CR-14-KAC-JEM-3
                               )
OMAR BONILLA-SERNA,            )
                               )
            Defendant.         )

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REVOKE DETENTION ORDER**

Before the Court is Defendant Omar Bonilla-Serna's "Motion to Revoke Magistrate Judge's Detention Order and Request for Immediate Release with Conditions" [Doc. 145]. For the reasons below, the Court denies Defendant's Motion [Doc. 145].

I.     **Background**

A grand jury indicted Defendant on eight (8) counts in March 2026 [*See* Doc. 73]. Count One charged Defendant with one (1) count of conspiring to harbor illegal aliens for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(I), and (a)(1)(B)(i) [*See id.* at 1]. Count Three charged him with conspiring to (1) prevent United States officers from lawfully discharging their duties, (2) injure United States officers on account of, and while such officers were engaged in, their official duties, and (3) injure the property of United States officers to impede them in the discharge of their official duties, all in violation of 18 U.S.C. § 372 [*See id.* at 2-4]. Counts Four through Nine each charged Defendant, aided and abetted by others, with unique instances of harboring an individual illegal alien for purposes of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i) and 18 U.S.C. § 2 [*See id.* at 4-7].

Defendant is a citizen of Mexico, not a United States citizen [*See* Doc. 144-1 at 2]. He has a Mexican passport and his mother resides in Mexico [*See* Amended Pretrial Services Report at 2].[1] Long before Defendant's indictment, in 2002 or 2003, he entered the United States illegally [*See* Doc. 141 at 2 (citation omitted)]. In May 2008, he was apprehending at a ranch in Texas and granted the opportunity to voluntarily return to Mexico [*Id.*]. But in June 2008, he was found illegally in the United States [*Id.*]. Again, he was allowed to voluntarily return to Mexico [*Id.*]. But in March 2009, Defendant was taken into custody in the United States on suspicions of smuggling, which he denied [*Id.* at 2-3]. Again, he was allowed to voluntarily return to Mexico [*Id.*]. But in February 2013, Defendant was arrested in the United States [*Id.* at 3]. He has been in removal proceedings since then [*Id.* at 1]. In 2023, an immigration judge determined that Defendant is removable from the United States [Doc. 144-1 at 3]. But Defendant has not been removed. And in approximately December 2024, he acquired authorization to work in the United States [Pretrial Services Report at 2].

In December 2025, Defendant was allegedly working as a subcontractor at a construction site for Codefendant Tyler Shane Wells [Doc. 144-1 at 1]. On December 20, 2025, while federal immigration officials were approaching the site, Defendant sent a text message to Wells: "Is any way you can check if ice is inside of the job? Or if is normal police" [Doc. 122 at 1-2]. Wells responded "Hold on" [*Id.* at 2]. Shortly thereafter, Wells messaged Defendant and others "Everybody get your guys off the job site. Send them all home. Ice is on the job." [*Id.*]. The next day, Defendant asked "is it possible to put a fence to cover the property" [*Id.*]. Wells said "Yes" he would talk with someone "about get[ting] one" [*Id.*]. Defendant said "Thanks boss" [*Id.*]. The

---

[1] The Pretrial Service Reports were made available to the Parties and are on file with the Court.

work continued.  On January 5, 2026, Wells messaged Defendant and others "Everybody get out of here ice is here" [*Id.* at 3].  That day, Wells imposed new rules:  "Starting tomorrow, we are going to block the construction entrances for the job site so whoever wants to work can work and we're gonna leave cruise open and one of my subs is going to watch the entrance and he'll call me and let me know if ice pulls in so everybody can be prepared" [*Id.*].  Defendant's response:  "Ok" [*Id.*].

On January 13, 2026, Codefendant Alex Bonilla-Servin, Defendant's nephew, allegedly positioned a truck to block the construction site's entrance [*Id.*].  The truck hit a vehicle driven by federal immigration officials [*Id.*].  And allegedly illegal aliens who were working at the construction site fled and hid [*Id.*].

Defendant was not initially charged with a crime, but on January 21, 2026, Wells and Bonilla-Servin were [*See* Doc. 16].  On January 23, law enforcement met with Wells to arrest him [*See* Doc. 122 at 4].  Wells agreed to make a recorded call to Defendant [*Id.*].  In that call, Wells asked Defendant if Bonilla-Servin's blocking the site was related to "watching for ICE" [*Id.*].  Defendant did not tell the whole truth:  "Uh, when, when, when I go to work, I never think about that, because we are straight" [*Id.*].  On March 18, the grand jury indicted Defendant too [*See* Doc. 73].

On March 26, law enforcement officers arrested Defendant in the Northern District of Alabama [*See* Doc. 103 at 11].  It is undisputed that during the arrest, Defendant initially refused to follow the commands of law enforcement officers [*See* Doc. 140 at 2].  And he ran from law enforcement before being physically detained [*Id.*].

Defendant filed a "Motion for Pretrial Release" [Doc. 120].  The United States opposed [Doc. 122].  After a hearing and supplemental briefing, [*see* Docs. 137, 140, 141], the

3

Honorable Jill E. McCook, a magistrate judge, ordered that Defendant be detained pretrial, [*see* Doc. 144].  Defendant appealed the detention order to the undersigned under 18 U.S.C. § 3145(b) [Doc. 145].  The United States opposed [Doc. 147].

## II.     Analysis

If a magistrate judge orders a defendant detained pending trial, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the [detention] order."  18 U.S.C. § 3145(b).  The district court must generally review the magistrate judge's order de novo and may do so without holding a further hearing.  *See United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013); *United States v. Romans*, No. 00-5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000).  Here, both Parties recognize that the Court need not hold another hearing [*See* Doc. 145 at 3, 147 at 4].  And no Party has requested a hearing, so the Court proceeds on the already-fulsome record.

18 U.S.C. § 3142 governs the release or detention of a defendant pretrial.  Under Section 3142(f)(2), the Court must "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community" "upon motion of the attorney for the Government or upon the judicial officer's own motion in a case" that "involves (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice."  18 U.S.C. § 3142(f)(2).  Under Section 3142(e), the Court must "order the detention of the person before trial" if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community."  18 U.S.C. § 3142(e)(1).  To make this determination, the Court "take[s] into account the available information" concerning the factors listed at Section 3142(g).  18 U.S.C. § 3142(g).

4

To begin,[2] Judge McCook properly held a hearing on issues related to detention and concluded that this case "involves" a "serious risk that" Defendant "will flee." Under Section 3142(f)(2), the Court must "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community" where the Court concludes that a case "involves . . . a serious risk that" Defendant "will flee." 18 U.S.C. § 3142(f)(2). But the law does not require the Court to hold two unique hearings to assess these related issues. *See United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). Rather, the only on-point case from the United States Court of Appeals for the Sixth Circuit that this Court or either Party located, suggests that these are distinct but related inquiries. *See United States v. Hardon*. No. 98-1625, 1998 WL 320945, at *1 (6th Cir. June 4, 1998) ("The Bail Reform Act provides that a defendant may be detained pending trial only if certain findings are made after a detention hearing" (citing 18 U.S.C. §§ 3142(e) and (f))). And here, Judge McCook concluded that this "case involves" "a serious risk that the defendant will flee if released" [Doc. 144 at 1].

And even if Defendant's preferred "preponderance of the evidence" quantum of proof applied,[3] the United States met its burden to show that this case involves "a serious risk that" Defendant "will flee" [*See* Doc. 154 at 2 (citations omitted)]. Defendant is not an American citizen [*See* Doc. 144-1 at 2]. He entered this country illegally at least three (3) times before, each

_____

[2] Defendant's Motion to Revoke Detention Order [Doc. 145] initially argues only application of the Section 3142(g) factors [*See* Doc. 145]. But by his Reply, Defendant clearly raises the propriety of holding a detention hearing under Section 3142(f) [*See* Doc. 154]. Because both Parties briefed the issue before the magistrate judge, the Court addresses it here, even though Defendant did not raise it until his Reply.

[3] Much has been written on this question, but the Sixth Circuit has not yet decided it. *See United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, * 5 (M.D. Tenn. May 27, 2021). And the Court need not, and does not, decide it here.

5

time promising to return to his native Mexico, to no avail [Doc. 141 at 2-3]. Defendant has been in removal proceedings since 2013, and before his arrest, he had been found removable from the United States [Docs. 141 at 3, 144-1 at 3]. The allegations of this case too suggest a risk of flight—Defendant and his codefendants allegedly worked to conceal their illegal activities from law enforcement [*See* Doc. 122 at 1-3]. Defendant, himself, suggested that a "fence" be erected to hide their activity [*Id.* at 2]. Perhaps most significant, during Defendant's arrest in March, he failed to obey law enforcement officers and ran [*See* Docs. 122 at 5-8, 140 at 2]. This recent flight is heavily probative of the risk that Defendant will flee in the future. *See United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987) ("Recent flight from justice, particularly on the same charges for which detention is sought, is strong indication of a serious risk of flight"); *United States v. Holguin-Valdez,* No. 25-20078-01-DDC, 2025 WL 3687302, at *6-8 (D. Kan. Dec. 19, 2025). And the significant sentence, and potential immigration consequences, associated with a federal conviction for the charged offenses, creates an incentive to flee in the future. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, *1-2 (6th Cir. March 18, 2020). All told, the United States showed by a preponderance of the evidence that there is a "serious risk" that Defendant will flee if released. *See* 18 U.S.C. § 3142(f)(2)(A).

Moving to Section 3142(e), these same facts strongly support the conclusion that no "condition or combination of conditions will reasonably assure the appearance of" Defendant. *See* 18 U.S.C. § 3142(e)(1). At this stage, the Court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to

6

drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *see also United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010). The United States "must prove risk of flight by a preponderance of the evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

*First*, the nature and circumstances of the offenses charged suggest a risk of nonappearance. As Defendant admits, the charged offenses are "undoubtably serious" [*See* Doc. 145 at 5]. Indeed, Counts One and Four through Nine each carry a term of imprisonment of up to ten (10) years. *See* 8 U.S.C. § 1324(a)(1)(B)(i). When added to the fact that a conviction could prevent Defendant from remaining in the United States with his wife and children, this potential sentence creates a significant risk of nonappearance. *See Shuklin,* 2020 WL 2992522, at *1-2.

*Second*, the weight of the evidence of Defendant's risk of nonappearance is strong. *See* 18 U.S.C. § 3142(g)(2).[4] This second factor only goes to the likelihood that the defendant will pose a danger of nonappearance; it "is not a pretrial determination of guilt." *See United States v. Cobix-Espinoza,* 655 F. Supp. 3d 584, 595 (E.D. Ky. 2023); *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020). When Defendant was arrested, he disobeyed officers and attempted to run [Doc. 104 at 2]. His decision to flee, even in the face of multiple armed law

---

[4] Defendant relies on three (3) district court opinions to argue that "the weight of the evidence should be treated as the least important" factor [*See* Doc. 120 at 5 (cleaned up)]. But the Sixth Circuit has noted that this "proposition is unsupported by [its] precedent" and declined to adopt it. *See United States v. Creed-Boehn*, No. 24-1685, 2025 WL 1145021, at *3 (6th Cir. Apr. 18, 2025).

enforcement officers provides strong evidence supporting a risk of nonappearance. Couple that with Defendant's Mexican passport, family in Mexico, and previous periodic return to Mexico from the United States, and the United States has shown motive and means to flee—all Defendant would need is an opportunity.

*Third*, Defendant's history and characteristics cut both ways. Defendant has lived in Tennessee for several years and has many family members here [Amended Pretrial Services Report at 2]. He also had authorization to work in the United States in 2024 and significant business [*See* Pretrial Services Report at 2]. But Defendant has illegally entered the United States at least three (3) times after being allowed to voluntarily remove to Mexico [Doc. 144-1 at 2-3]. And after ten (10) years in the removal process, he was found removable from the United States in 2023 [*Id.*]. To be sure, the Court's analysis under Section 3142 is distinct from the analysis that would apply for removal under the Immigration and Nationality Act. *See United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018). But Defendant's history of illegally reentering the United States suggests an unwillingness to follow the law and weighs against his release. *See Cobix-Espinoza*, 655 F. Supp. 3d at 595. Ultimately, this factor is not dispositive. *See* 18 U.S.C. § 3142(g)(3).

*Last*, because the Court relies on the risk of nonappearance to support detention, it is unclear how any "danger" maps onto the legal inquiry. *See* 18 U.S.C. § 3142(g)(4). But this community has an interest in ensuring that individuals who allegedly commit crimes do not evade justice. *See United States v. Frost*, 455 F. Supp.3d 395, 400 (E.D. Mich. 2020).

In response, Defendant proposes conditions of release, including no contact with victims and witnesses, remaining in the Middle and Eastern Districts of Tennessee or the Northern District of Alabama, surrendering his passport, and submitting to GPS monitoring [*See* Doc. 145 at 14]. But weighing the pertinent factors in light of the evidence in the record, the United States has met

its burden to show that neither these conditions, nor others the Court could impose, would "reasonably assure" Defendant's appearance as required. *See* 18 U.S.C. § 3142(e)(1), (f); *Hinton*, 113 F. App'x at 77. Specifically, Defendant has a history of violating this country's immigration laws, stands accused of serious charges of concealing others from the law, and fled from law enforcement officers when they attempted to arrest him. This raises serious concerns about his willingness to comply with the Court's orders and appear as required. Neither the mitigating factors Defendant cites, nor his proposed conditions would reasonably assure his appearance. *See* 18 U.S.C. § 3142(e)(1).

## III.  Conclusion

Considering the relevant factors de novo, no conditions of release would reasonably assure "the appearance of" Defendant "as required." *See* 18 U.S.C. § 3142(e)(1). So, the Court **DENIES** Defendant's "Motion to Revoke Magistrate Judge's Detention Order and Request for Immediate Release with Conditions" [Doc. 145].

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge

9