UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:26-CR-14-KAC-JEM |
| | ) | |
| TYLER SHANE WELLS, | ) | |
| ALEXANDER BONILLA-SERVIN, and | ) | |
| OMAR BONILLA-SERNA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. The undersigned granted the parties' request to submit a proposed jury questionnaire for the Court's review and approval [Doc. 197 p. 2]. Defendants Tyler Wells, Alexander Bonilla-Servin, and Omar Bonilla-Serna, along with the United States, present a Joint Proposed Questionnaire asking the Court to submit three questions to prospective jurors designed to determine the prospective jurors' impartiality [Doc. 187 pp. 1–2]. These questions ask prospective jurors about their exposure to information about this case, their experiences with immigration enforcement, and their "strongly held views about federal immigration enforcement" [*Id.* at 2]. Defendants Wells, Bonilla-Servin, and Bonilla-Serna separately submit a fourth question asking the prospective jurors about their social media posts on immigration enforcement or border security [Doc. 188 p. 1]. Defendants argue this additional question preserves their constitutional right to inquire about the jurors' racial and ethnic bias in the context of their social media posts on immigration enforcement [*Id.* at 3].

For the reasons discussed herein, the Court finds the three questions in the parties' Joint Proposed Questionnaire along with the proposed explanatory instructions are appropriate and will

be submitted to the venire [Doc. 187]. The Court declines to submit the Defendants' fourth proposed question [Doc. 188 p. 1], finding it unfocused regarding racial or ethnic bias and largely cumulative of information sought in the original three questions. Accordingly, Defendants' motion to submit an additional jury question [**Doc. 188**] is **DENIED**.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

Defendants Wells, Bonilla-Servin, and Bonilla-Serna are charged with conspiring with Nicholas Foy Pastor and others known and unknown to "conceal, harbor, and shield from detection" in buildings and other places for the purpose of commercial advantage and private financial gain, six aliens, while "knowing and in reckless disregard of the fact that" the aliens had illegally entered and remained in the United States, all in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(I), and (a)(1)(B)(i) (Count One) [Doc. 73 p. 1]. Defendants Wells, Bonilla-Servin, and Bonilla-Serna are also charged with conspiring with each other and others known and unknown to prevent federal officers from lawfully discharging their duties, to injure federal officers on account of and while engaged in their official duties, and to injure the property of federal officers to impede them in the discharge of their official duties, all in violation of 18 U.S.C. § 372 (Count Three) [*Id.* at 2–4]. The Superseding Indictment also alleges that Defendants Wells, Bonilla-Servin, and Bonilla-Serna, along with Defendant Pastore, aided and abetted each other in six counts of concealing, harboring, and shielding from detection six illegal aliens "in buildings and other places for the purpose of commercial advantage and private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)[ and] (a)(1)(B)(i)" (Counts Four–Nine) [*Id.* at 4–7]. Defendant Bonilla-Servin is solely charged with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfere[ing]" with federal officers in the performance of their official duties by using his vehicle to strike the officers' vehicle in violation of 18 U.S.C.

§ 111(b) (Count Two) [*Id.* at 2]. Several charges relate to events occurring "on or about January 13, 2026" and at a "construction site" [*See id.* at 2–6].

On February 20, 2026, Defendant Wells moved for the Court to approve use of a "simple juror questionnaire to assist the parties in jury selection, given the highly publicized and politically sensitive nature of the allegations in this case" [Doc. 42 p. 1]. He contends that "significant media coverage" followed his and Defendant Bonilla-Servin's arrests and that this case has been the subject of "online commentary" [*Id.*]. He also asserts that unlawful immigration is a controversial issue and immigration enforcement actions and demonstrations related thereto "have dominated the news" [*Id.*]. Defendant Wells proposed working with Government's counsel to prepare a jury questionnaire, observing that "[w]ritten juror questionnaires promote candor by allowing prospective jurors to disclose sensitive matters privately, particularly those bearing on bias or personal connections, and they enhance the efficiency of voir dire by enabling the court and counsel to identify areas requiring focused follow-up questioning" [*Id.* at 2 (citing Lin S. Lilley, *Let Jurors Speak the Truth, in Writing*, 41 TRIAL 64, 64–65 (July 2005))].

Defendants Bonilla-Servin [Doc. 49] and Bonilla-Serna [Doc. 157] moved to adopt Defendant Wells's motion, and the Government responded that it does not oppose the use of a jury questionnaire if it is approved by the Court and parties because "[a] fair questionnaire helps both sides" [Doc. 57 p. 1].

Following oral argument on the motion on September 9, 2026, the undersigned granted the requests to submit proposed jury questionnaire questions [Doc. 182 p. 1]. The Court set deadlines for submission of joint and separate jury questions and for a response [*Id.* at 1–2].

On September 18, 2026, the parties submitted a Joint Proposed Questionnaire with three questions to be submitted to the prospective jurors in addition to the Court's standard questionnaire

[Doc. 187 p. 1]. They maintain that the following questions will assist the Court and the parties in determining the potential jurors' predispositions related to impartiality:

> INSTRUCTIONS
>
> Please answer each of the following questions as completely and honestly as you can. Your answers will be kept confidential and used only for jury selection purposes. There are no "right" or "wrong" answers.
>
> In this case, the Superseding Indictment alleges that Mr. Wells, Mr. Bonilla-Servin, and Mr. Bonilla-Serna violated several federal statutes with regard to their activities either on or with respect to a Knox County construction site during law enforcement immigration enforcement activities.
>
> 1. Have you seen, heard, or read anything about this case or the events alleged in this case? If so, please identify the source and briefly describe what you recall.
>
> 2. Have you or someone close to you had a personal, professional, or other significant experience with federal immigration enforcement that might affect your ability to be fair and impartial in this case?" If your answer is yes, please briefly describe this experience and how it has affected you.
>
> 3. Do you have any strongly held views about federal immigration enforcement that you believe would make it difficult for you to fairly and impartially decide this case based solely on the evidence presented in court and the law as instructed by the Court?" If so, please briefly describe those views.

[*Id*. at 1–2].

On September 23, 2026, Defendants filed a Motion for Additional Jury Question, seeking to add the following question:

> Have you posted comments, replied to others, or shared content on media sites or social media sites regarding immigration enforcement or border security. If yes, please describe the platforms you used and the viewpoints you expressed in those posts.

[Doc. 188 p. 1]. In support of this request, Defendants assert that they have a constitutional right to assess a potential juror's racial or ethnic bias in a case involving "more substantial indications of the likelihood of racial or ethnic prejudice affecting jurors" [*Id.* (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 190 (1981))]. They also maintain that questioning prospective jurors on their "social media habits" is appropriate [*Id.* at 2–3 (citing *United States v. Tsarnaev*, 595 U.S. 302, 313–15 (2022))]. Defendants argue the proposed question is "constitutionally necessary" because "[t]his case involves highly publicized, polarizing themes of federal law enforcement and immigration enforcement operations" [*Id.* at 3]. Specifically, they note that two of the Defendants and the six individuals Defendants are charged with harboring are Hispanic [*Id.*]. They also point out that Defendant Bonilla-Serna is a Mexican citizen [*Id.*]. Defendants assert this case has been the subject of "frequent media coverage" and "significant commentary on social media" including comments on "the ethnicity of the individuals at the construction site" [*Id.*]. The Government did not respond or object to this motion.

## II. ANALYSIS

Defendants have a Sixth Amendment right to an impartial jury. *United States v. Tsarnaev*, 595 U.S. 302, 312 (2022); *United States v. Blanton*, 719 F.2d 815, 829–30 (6th Cir. 1983) (en banc) (citing *Ivin v. Dowd*, 366 U.S. 717, 722 (1960)). "[A] juror who has formed an opinion cannot be impartial." *Blanton*, 719 F.2d at 830 (quoting *Irvin*, 366 U.S. at 722 (citation omitted)). But a juror need not be "totally ignorant of the facts and issues involved" in the case. *Id.* (quoting *Irvin*, 366 U.S. at 722); *see also Tsarnaev*, 595 U.S. at 312 ("The right to an 'impartial' jury 'does not require *ignorance*.'" (citation omitted)). Given the rapid and ubiquitous nature of communication in modern life, such would be an impossible standard. *Blanton*, 719 F.2d at 830 (citing *Irvin*, 366 U.S. at 722). Instead, "[i]t is sufficient if the juror can lay aside his impression

or opinion and render a verdict based on the evidence presented in court." *Id.* (quoting *Irvin*, 366 U.S. at 723 (citations omitted)).

"A trial court protects the defendant's Sixth Amendment right by ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'" *Tsarnaev*, 595 U.S. at 312 (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). The trial judge's primary tool in this endeavor is *voir dire*. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."). "A trial court's broad discretion in this area includes deciding what questions to ask prospective jurors." *Tsarnaev*, 595 U.S. at 313 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). Considering this discretion, "no blanket constitutional requirement [obligates the trial judge to] ask each prospective juror what he heard, read, or saw about a case in the media." *Id.* (citing *Mu'Min*, 500 U.S. at 417). "Instead, as in any case, the district court's duty is to conduct a thorough jury-selection process that allows the judge to evaluate whether each prospective juror is 'to be believed when he says he has not formed an opinion about the case.'" *Id.* (quoting *Mu'Min*, 500 U.S. at 425).

Focused jury questionnaires are one means by which the trial judge can seek to expose bias and partiality. *Skilling v. United States*, 561 U.S. 358, 388 (2010) (observing that a jury questionnaire "help[s] to identify prospective jurors excusable for cause and serve[s] as a springboard for further questions put to remaining members of the array"). In *Tsarnaev*, a high-publicity criminal case where the defendant was charged with deploying bombs at the Boston Marathon, the district court used an expanded jury pool, extensive voir dire, and a one-hundred-question juror questionnaire. 595 U.S. at 314. The questionnaire asked about media consumption and whether potential jurors had commented about the case in letters, calls, or online posts, but

"most pointedly," it asked whether that information caused the potential jurors to form an opinion on the defendant's guilt or punishment. *Id*. Despite the trial court's rejection of a proposed question that prospective jurors list all facts they learned from the media and other sources, the jury selection process was "eminently reasonable" and consistent with Supreme Court precedent. *Id*. at 309, 314.

Here, the undersigned finds the three agreed-upon questions are focused not only to reveal potential bias but also to illuminate whether the prospective juror's experiences with or strongly held views on immigration enforcement would affect the juror's ability to decide the case based solely on the evidence presented. The Defendant's proposed question on social media posts, however, like the rejected question in *Tsarnaev*, is "unfocused, risk[s] producing unmanageable data, and would at best shed light on preconceptions that other questions already probe[]." 595 U.S. at 314 (citation modified). The three agreed-upon questions already solicit the prospective jurors' experiences and views on immigration enforcement, whether they have communicated those views on social media or not. The agreed-upon question regarding whether the prospective juror has "seen, heard, or read anything about this case or the events alleged" also covers instances in which the potential juror is commenting about this case online. Defendants argue "[t]here is a difference between a juror's passive media consumption and active digital authorship on media sites and social media sites" [Doc. 188 p. 2]. But they do not articulate the significance of this "difference" or how it permits determination of a juror's partiality in a way the other questions do not.

Defendants also contend that the proposed question about social media posts will allow them to assess the potential juror's racial or ethnic bias against Hispanics. "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups." *Rosales-Lopez*, 451 U.S. at 190. Questions about racial or ethnic bias are constitutionally

mandated when racial or ethnic issues are "inextricably bound up with the conduct of the trial," such as when racial motivations or prejudice are part of the alleged offense or the planned defense. *Id*. at 189 (citations omitted). "[F]ailure to honor [a defendant's] request" to inquire into racial or ethnic prejudice is "reversible error only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." *Id.* at 191. For example, inquiry is likely necessary when "a defendant [is] accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." *Id.* at 192 (citations omitted).

Here, the minimal allegations in Defendants' motion fail to demonstrate that inquiry into a potential juror's racial or ethnic bias is necessary in this case constitutionally or otherwise. *See, e.g.*, *Rosalez-Lopez*, 451 U.S. at 192 (observing that neither party alleged that the case involved "special circumstances" of racial or ethnic prejudice, nor was there "a violent criminal act with a victim of a different racial or ethnic group;" instead, "petitioner was accused of a victimless crime: aiding members of his own ethnic group to gain illegal entry into the United States"). But even if Defendants showed reason to inquire into a potential juror's racial or ethnic bias because two defendants are Hispanic and one is a citizen of Mexico, because the six individuals referenced in the Superseding Indictment are Hispanic, and because of the "significant commentary on social media" including comments on "the ethnicity of the individuals at the construction site" [Doc. 188 p. 3], the question advocated by Defendants is not targeted to identify racial or ethnic bias. Instead, Defendants ask the Court to inquire about whether prospective jurors have ever commented or shared content on social media sites about immigration enforcement or border security. This question is unfocused for the purported purpose of disclosing racial and ethnic bias and cumulative to the agreed-upon questions on immigration enforcement.

In sum, the three agreed-upon questions are appropriate to include in a jury questionnaire, but Defendants' separate question on social media content is duplicative and unfocused.

## III. CONCLUSION

For the reasons stated herein, the parties' agreed-upon instructions and questions are **APPROVED** for distribution to the venire for the trial in this matter:

> INSTRUCTIONS
>
> Please answer each of the following questions as completely and honestly as you can. Your answers will be kept confidential and used only for jury selection purposes. There are no "right" or "wrong" answers.
>
> In this case, the Superseding Indictment alleges that Mr. Wells, Mr. Bonilla-Servin, and Mr. Bonilla-Serna violated several federal statutes with regard to their activities either on or with respect to a Knox County construction site during law enforcement immigration enforcement activities.
>
> 1. Have you seen, heard, or read anything about this case or the events alleged in this case? If so, please identify the source and briefly describe what you recall.
>
> 2. Have you or someone close to you had a personal, professional, or other significant experience with federal immigration enforcement that might affect your ability to be fair and impartial in this case?" If your answer is yes, please briefly describe this experience and how it has affected you.
>
> 3. Do you have any strongly held views about federal immigration enforcement that you believe would make it difficult for you to fairly and impartially decide this case based solely on the evidence presented in court and the law as instructed by the Court?" If so, please briefly describe those views.

The Clerk of Court is **DIRECTED** to distribute, in a manner left to her discretion, these supplemental instructions and questions to the venire such that responses will be received by the Clerk of Court before she disseminates the venire's responses to the standard jury questionnaire to the parties. The Clerk of Court is further **DIRECTED** to provide the responses to the supplemental

questions to the parties contemporaneously with the venire's responses to the standard jury questionnaire.

Defendants' Motion for Additional Jury Question [**Doc. 188**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

Jill. E. McCook
United States Magistrate Judge